IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOEY McCROSSEN,

                              Plaintiff,

        v.                                                          OPINION and ORDER

NANCY BERRYHILL,                                                    18-cv-415-jdp
Acting Commissioner of the Social
Security Administration,

                              Defendant.

---

        Plaintiff Joey McCrossen seeks judicial review of a final decision of defendant Nancy

Berryhill, Acting Commissioner of the Social Security Administration, finding McCrossen not

disabled within the meaning of the Social Security Act. The administrate law judge (ALJ),

Deborah E. Ellis, concluded that McCrossen suffered from knee dysfunction, degenerative disc

disease, fibromyalgia, and obesity, but that he retained the capacity to perform some light

work, including the jobs of batch assembler, routing clerk, and electronics worker.

        On appeal, McCrossen says that the ALJ erred by: (1) failing to adequately explain her

reasons for concluding that McCrossen did not meet Listing 1.02A; (2) not giving adequate

weight to the opinion of McCrossen's treating physician; and (3) conducting a faulty credibility

analysis. The case is scheduled for an oral argument on January 11, 2019, but the court

concludes that no oral argument is needed in light of the relatively straightforward nature of

the issues. For the reasons explained below, the court disagrees with each of McCrossen's

contentions and will affirm the commissioner's decision.

ANALYSIS

**A. Listing 1.02A**

An ALJ must find that a claimant is disabled if the claimant's impairments are "medically equal" in severity to an impairment on the list of pre-determined disabling impairments. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015); 20 C.F.R. § 404.1529(d)(3). In this case, the ALJ considered and rejected the possibility that McCrossen met the requirements for Listing 1.02A, which relates to a "major dysfunction" of a "major peripheral weight-bearing joint." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02A.

The ALJ concluded that McCrossen failed to show an "inability to ambulate effectively," which is required under § 1.02A. The regulations define that phrase as follows:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.* § 1.00B2b1. Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* § 1.00B2b2. The regulations also state that the ALJ "must consider any additional and cumulative effects of obesity" when determining whether a claimant meets a listing. *Id.* § 1.00Q.

McCrossen's primary contention in his opening brief as to this issue is that the ALJ failed to explain why she believed that the evidence did not support a finding that McCrossen

is unable to ambulate effectively. It is true that the ALJ's decision does not provide this reasoning in the context of the section discussing the listings. But that is not required. The ALJ explained her reasoning in the discussion regarding her assessment of McCrossen's residual functional capacity and that is enough. *Id.* ("We do not discount [the ALJ's reasoning as to a listing] simply because it appears elsewhere in the decision.").

After the commissioner pointed this out in her opposition brief, McCrossen did not deny in his reply brief that the ALJ explained in detail why she believed that the medical evidence did not support a conclusion that McCrossen had an inability to ambulate effectively. R. 457–61.[1] Instead, McCrossen says that the medical records and tests cited by the ALJ do not conclusively show that McCrossen could ambulate effectively. But McCrossen has it backwards. It is *his* burden to show that he meets a listing, not the ALJ's burden to show that he doesn't. *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) ("The burden of proof at step 3 [relating to medical listings] rests with the claimant, and the ALJ has no duty to analyze equivalence when the claimant . . . presents no substantial evidence of it."); *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("Although an ALJ should provide a step-three analysis [regarding the listings], a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing.").

McCrossen does not point to any medical evidence that the ALJ failed to consider that would show that McCrossen meets Listing 1.02A. He cites various medical records that suggest he experiences some limitations walking. R. 1002 (physical therapy note that McCrossen "ambulates with a[n] increased hip external rotation bilaterally and slightly increased forward

---

[1] Record cites are to the administrative transcript, located at Dkt. 7.

flexion" and "display[s] increased effort with transitional movements" but is "able to heel walk" and "toe walk"); R. 1051 (physical therapy note that McCrossen has "limited walking tolerance"); R. 1469 (physical therapy note that McCrossen "ambulates with decreased weight bearing through the right lower extremity and decreased stance phase on the right lower extremity," but "presents today with no assistive device"); R. 1544 (physician note that McCrossen "ambulates with a slow, slightly spastic gait" but "muscle strength in the . . . lower extremities is 5/5"). But walking slowly and with some difficulty is a far cry from what a claimant must show under Listing 1.02A, which requires an "extreme limitation of the ability to walk." McCrossen also cites some of his own statements regarding his ability to walk, but a claimant's subjective complaints regarding a listing cannot fill a gap left by the objective evidence. *Curvin*, 778 F.3d at 650 ("[A]n ALJ will not consider the individual's own allegations if the medical evidence demonstrates a lack of severity.").

In any event, McCrossen doesn't even try to match his limitations with those included in the listing. For example, he does not say that he uses an assistive device, cannot walk a block, or cannot walk on uneven surfaces. In the absence of that type of evidence, this argument fails.

Alternatively, McCrossen says that the ALJ failed to explain how she considered McCrossen's obesity in determining whether he met Listing 1.02A. But McCrossen does not explain what was missing from the ALJ's analysis or how he believes the analysis should have been different. "[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (internal quotations omitted). So that is not an independent ground for reversal in this case.

**B. ALJ's consideration of McCrossen's credibility and the opinion of McCrossen's treating physician**

The parties agree that these issues are intertwined, so the court will consider them together. Josephine Ng, McCrossen's treating physician from November 2013 to January 2015, rendered an opinion that McCrossen could not work more than three hours a day, could rarely lift 10 pounds, and could occasionally lift fewer than 10 pounds. The ALJ gave "little weight" to Ng's opinion, both because it was not supported by the objective evidence and because it relied heavily on McCrossen's subjective complaints, which the ALJ found were not fully credible. R. 462.

McCrossen challenges the ALJ's assessment of Ng's opinion on multiple grounds. First, McCrossen says that the ALJ was "simply speculating that the doctor relied on [McCrossen's] statements." Dkt. 10, at 22. But it is difficult to take this argument seriously. McCrossen's own summary of Ng's opinions is little more than a collection of McCrossen's self reports of his condition. Dkt. 10, at 190. McCrossen doesn't identify any objective evidence that Ng relied on.

Second, McCrossen says that "the ALJ forgot that she found that McCrossen had fibromyalgia and that she found the condition to be a severe impairment." *Id.* at 22. Because fibromyalgia's symptoms are subjective, "finding Ng's findings out of proportion to the diagnostic imaging of record and physical findings has no credence." *Id.* This is another unpersuasive argument. A finding that a condition qualifies as a "severe impairment" is not the same thing as a finding of disability. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) ("[T]he step two determination of severity is merely a threshold requirement." (internal quotations omitted)). The ALJ found that McCrossen suffered from several severe impairments, but that

none of them were disabling. As the commissioner points out, fibromyalgia is not disabling per se, *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996), so a fibromyalgia diagnosis did not relieve McCrossen of the burden to prove a disability.

In any event, the ALJ did not reject Ng's opinion simply because it was not supported by objective evidence. The ALJ also concluded that it was unreasonable for Ng to rely so heavily on McCrossen's self reports. This issue overlaps substantially with the ALJ's credibility assessment of McCrossen.

McCrossen stated that he could not walk for more than 15 minutes at a time. R. 1478. Even on a "good day," McCrossen said that he "could maybe vacuum a little bit, bring up a laundry basket maybe depending." R. 501. In questioning McCrossen's credibility about the severity of his limitations (and also the persuasiveness of Ng's opinion), the ALJ relied primarily on the wide array of McCrossen's activities, including the following:

- going bow hunting on a regular basis, including "a few" times over the course of a week, and catching multiple deer, R. 1228, 1478, 1480, 1482, 1610, 1614;

- walking on uneven surfaces, R. 1478;

- yardwork, R. 1478;

- shoveling snow, R. 1197;

- raking leaves, R. 1211;

- going on short walks, R. 1211;

- woodworking, R. 1226, 1536;

- golfing, R. 1234;

- throwing horseshoes, including winning second or third place at tournaments, R. 1228, 1628;

- fishing and ice fishing, R. 1234, 1516, 1600, 1628;

- loading, unloading, and spreading manure on his garden, R. 1239;

- painting his deck, R. 1602;

- riding a bike, R. 1608;

- putting up deer stands, R. 1608,

- putting a 15-foot boat in the water, R. 1608,

- mowing the lawn, R. 1610;

- going to football games, R. 862;

- working on an ice shanty, R. 862;

- doing household chores, R. 862;

- staying "very active" by walking in the woods, hunting, and fishing, R. 1577–78;

- rolling hoses, R. 863.

The ALJ also discussed one other inconsistency. McCrossen stated that he was getting no more than two hours of sleep a night, but his CPAP recordings showed that he was getting between five and seven and a half hours of sleep a night. *Id.*

The court of appeals has "repeatedly warned against equating the activities of daily living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). This is both because an ability to perform a particular activity may not translate into an ability to work full time and because a claimant may perform an activity at home only because he has no other choice. *E.g.*, *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family

member, and playing cards "do not establish that a person is capable of engaging in substantial physical activity"). But the court of appeals has also acknowledged that the Social Security regulations expressly permit ALJs to consider a claimant's daily activities "in assessing whether his testimony about the effects of his impairments was credible or exaggerated." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

In this case, the breadth of McCrossen's activities is substantial and includes strenuous activities such as lifting a 15-foot boat and setting up a deer stand. And many of the activities are recreational, so McCrossen did not have to participate in them if they were too painful. So the ALJ was entitled to rely on these activities as well as the inconsistency about the amount of sleep McCrossen got when assessing McCrossen's credibility.

McCrossen's primary criticism of the ALJ's credibility assessment is that the ALJ did not give McCrossen an opportunity to explain the inconsistencies. Dkt. 10, at 26 ("The biggest problem was the lack of any development by the ALJ to ask the nature and circumstances of McCrossen's daily activities."). But that is simply inaccurate. The ALJ *did* ask McCrossen at the administrative hearing to reconcile his daily activities with his alleged disability:

> But the thing that I have to try to figure out is if you can do all these things you know why can't you work at a job? And that's what you have to help me with. . . . [L]et me give you an example. Just in reading your . . . counseling records, I learned in reading those records that you rake the lawn, go fishing, ride a bike, paint your deck, put your boat in and out of the water, put up deer stands, got a buck with a crossbow and another with a gun, got second place in a horseshoe tournament. So help me understand how somebody who can do all of that can't go to a job and work.

R. 486.

In response to this questioning, McCrossen did not deny that he participated in the activities and he did not say that the activities were so infrequent or insubstantial that they did

not provide an accurate view of his abilities. Instead, he gave two other responses. First, he said that he doesn't "do all that anymore." *Id.* And when the ALJ challenged that statement as inconsistent with the medical records, McCrossen changed his testimony to say that he could "hardly move . . . the following day" after he is active. R. 487. But the ALJ addressed that allegation in her decision, stating that it was contradicted by McCrossen's own journal, which showed that he engaged in the above activities multiple days in a row. R. 461.

McCrossen does not challenge the ALJ's conclusion that the record contradicts both of McCrossen's explanations, so the court need not address that issue. Instead, McCrossen says that the ALJ's questioning was inappropriate because it suggests that the ALJ was "more interested in identifying fraud than seeking an explanation." Dkt. 10, at 26. But these two things are not mutually exclusive. The ALJ identified information in the record that contradicted McCrossen's testimony and gave him an opportunity to explain why the inconsistency was more apparent than real, which is exactly what McCrossen says the ALJ was supposed to do. McCrossen cites no authority for the view that the ALJ's questions in this case were inappropriate in any way.

McCrossen also questions the relevance of some of the activities, stating that the woodworking he did was "light," that his son did most of the work when they went ice fishing, and that he played horseshoes because his doctor told him to. Dkt. 10, at 25–26. But McCrossen says nothing about most of the activities identified by the ALJ, so even if the court assumes that some of the activities are not probative, that would not undermine the ALJ's credibility analysis as a whole. *See Bates v. Colvin,* 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding ALJ's credibility assessment even though some of his reasoning was not supported by the record).

McCrossen's activities and the inconsistencies in the record may not show conclusively that McCrossen can work full time. But they provide support for the ALJ's view that McCrossen was exaggerating his symptoms and was not fully credible. Because McCrossen (and his physician) relied almost entirely on McCrossen's own statements to prove disability, a lack of credibility is fatal to McCrossen's claim.

Even if the ALJ's credibility assessment was not perfect in every detail, the court cannot say that it is "patently wrong," which is the applicable standard of review. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). The ALJ's conclusion is "reasoned and supported," so it is entitled to deference. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012). At the very least, the inconsistencies in the record support the conclusion

McCrossen has failed to show that the ALJ committed any reversible errors. The court will deny McCrossen's motion for summary judgment and affirm the commissioner's decision.

ORDER

IT IS ORDERED that plaintiff Joey McCrossen's motion for summary judgment, Dkt. 9, is DENIED and the administrative decision is AFFIRMED. The clerk of court is directed to enter judgment and close this case.

Entered December 20, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge